498 So.2d 727 (1986)
LOUISIANA STATE BAR ASSOCIATION
v.
Charles WILLIAMS.
No. 85-B-1893.
Supreme Court of Louisiana.
November 24, 1986.
Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, *728 Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, for relator.
Charles Williams, New Orleans, for respondent.

DISCIPLINARY PROCEEDING
DENNIS, Justice.[*]
The Louisiana State Bar Association, through its Committee on Professional Responsibility, seeks to have Charles Williams disbarred for disciplinary rule violations.
The Commissioner appointed by the court in this case, Anita M. Warner, has prepared excellent findings of fact and conclusions of law with which we agree substantially. Therefore, for a more detailed description of the specifications and the evidence, we refer the reader to the Commissioner's report which is reproduced in the appendix to this opinion.

Specification No. 1
Mary Hollander hired the respondent, Charles Williams, to represent her in a Worker's Compensation action against her husband's employer arising out of his work-related fatal accident. In January, 1984 the Respondent settled the case out of court for the sum of $40,000.
At the time of the settlement of Mrs. Hollander's case, Williams borrowed $5,000 of the proceeds from his client, giving her his promissory note for the sum, without interest, but providing for 20% attorneys fees, and due on May 1, 1984. Respondent did not advise Mrs. Hollander to seek the advice of another attorney before making the loan. Mrs. Hollander relied upon the Respondent as her attorney in whom she had placed her trust in deciding to make the loan. She was not a knowledgeable money lender.
A lawyer may not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment on that matter for the protection of the client, unless the client has consented after full disclosure. DR 5-104(A) Because the existence of any attorney-client relationship turns largely on the client's subjective belief that it exists, this court has held that an unsophisticated client who is asked for a loan by her attorney out of her settlement proceeds is justified in believing the lawyer is acting as her attorney and guardian of her interests. LSBA v. Bosworth, 481 So.2d 567 (La. 1986). Consequently, Williams violated DR 5-104(A) by entering into a business transaction with his client, in conflict with her interests, while she justifiably relied on him as her attorney, without making a full disclosure or advising her to seek independent legal advice.

Specification No. 9
In accordance with the employment contract between Mrs. Hollander and Williams, he charged and collected from her a fee of 20% of the recovery, amounting to $8,000.
The fees of an attorney who renders service for an employee coming under the Worker's Compensation Law may not exceed 20% of the first ten thousand dollars of any award and 10% of the part of any award in excess of ten thousand dollars. La.R.S. 23:1141 Therefore, the fee collected by Williams exceeded the legal limitation by $3,000. Consequently, Williams violated not only the Compensation law but also DR 2-106 which prohibits a lawyer from charging or collecting an illegal or clearly excessive fee.
Williams pleaded ignorance of the law which, of course, is not an excuse in either a criminal or a disciplinary proceeding. He acknowledged his error and expressed a willingness to repay the excessive amount collected. He has failed to make restitution because of a claimed inability to raise the funds.

*729 Specification No. 2

On September 8, 1982 Clifford Thompson paid Williams $100 and received a receipt with the notation, "on account of filing suit against Mrs. J.V. Mann." Thompson steadfastly maintained that this was an advance to Williams to file suit and prosecute a claim against his lessor for illegal eviction and damages. He testified that in response to his several requests Williams gave him false excuses for not filing suit. It is undisputed that Williams did not file suit or take other action to enforce the claim. On the other hand, Williams testified that he accepted the $100 fee only in return for advice he gave Thompson on how to prosecute a suit in small claims court. Williams, however, did not deny giving Thompson the receipt or making the notation thereon. From our review of the record, we agree that the evidence showed clearly and convincingly, that Williams violated disciplinary rules by neglecting a legal matter entrusted to him, DR 6-101(A)(3), and engaged in deceit or misrepresentation regarding his delinquency DR 1-102(A)(4).

Specification No. 3
Williams engaged in dishonesty, deceit and misrepresentation by knowingly issuing a $275 check on an account without sufficient funds and failing to make it good despite repeated demands. DR 1-102(A)(4) Respondent admitted issuing the check with knowledge of his deficient account but claimed that he had asked the payee to hold it until further notice. However, we are clearly convinced that he at the very least failed to repair the damage done to the innocent third persons even after he learned that the check had been cashed by them. The third parties suffered a loss because of the risk Williams knowingly created by issuing the NSF check.

Specification Nos. 8 and 10
Williams admittedly practiced dishonesty, deceit and misrepresentation by swearing that he owned a parcel of immovable property which was in fact not his own in connection with a bail bond, DR 1-102, and acted in derogation of La.C.Cr.P. art. 326 which provides that a person shall not be released on bail for which an attorney becomes surety or provides money or property for bail. He posted a personal surety bond to obtain the release of his brother who was charged with armed robbery and later substituted property of his own for that which he had falsely sworn was his own. Respondent testified that he knowingly signed the false statement of ownership because the property certificate obtained by his sister had been erroneously prepared by the clerk's office, he was upset over his brother's arrest, and he felt no harm would occur because he owned property with comparable value. He pleaded ignorance of article 326 which is designed to prevent an attorney from acting as surety or bail bondsman. In our opinion, neither Respondent's emotional state nor his ignorance of the law justifies or mitigates these infractions.

Specification Nos. 4-7
We agree with the Commissioner that the evidence in support of specifications 4-7 fell short of the clear and convincing standard for the reasons assigned in her appended report. The evidence tended to show but did not convincingly prove that respondent overcharged and failed to properly represent a client for post conviction relief, filed a lawsuit on behalf of GMAC without its authorization, falsified documents and failed to properly represent a client in a worker's compensation suit or solicited and obtained a client by providing that client with financial assistance.

Sanctions
The purposes of a disciplinary proceeding are to evaluate the character of a lawyer, in the light of his conduct and background, to determine whether he is morally fit to continue in the practice of law; and to remove him from the profession if he is unable or likely to be unable to discharge his professional duties; or, if the lawyer is reformable, to impose a suspension or other *730 sanction to correct and deter the errant attorney, deter other lawyers from similar misconduct, and recompense for the damage done to the legal profession and the administration of justice. LSBA Arts. of Incorp., Art. XV, §§ 5, 6 and 8; LSBA v. Hinrichs, 486 So.2d 116 (La.1986); LSBA v. Bensabat, 378 So.2d 380 (La.1979); LSBA v. Philips, 363 So.2d 667 (La.1978); LSBA v. Gremillion, 320 So.2d 171 (La. 1975); LSBA v. Weysham, 307 So.2d 336 (La.1975).
Respondent committed a number of violations of the disciplinary rules which indicate that he is not presently morally fit to continue in the practice of the law but the evidence suggests that he is reformable and that he should not be removed from the profession. His ignorance as much as his lack of dedication to the ethical precepts contributed to his failure to adhere to the ideals of our profession. Accordingly, we will fashion a sanction calculated to further his education in the disciplinary rules, to reform him before he is permitted to return to active practice, and to promote the other goals of professional responsibility.
It is ordered, adjudged and decreed that Charles Williams be suspended from the practice of law for a minimum term of two years; that at the end of his two year suspension he may petition for and be readmitted to active practice provided that he has fulfilled the following conditions: (1) restitution of the $5,000 loan and the $3,000 excessive fee to Mary Hollander; (2) restitution of the $275 to the owners of Travis Grocery and Market in Bogalusa; (3) attainment of a satisfactory score on the Multistate Professional Responsibility Examination to be taken as directed by the Committee on Professional Responsibility; (4) payment of all costs of these proceedings. Unless Respondent complies with all of these conditions, his suspension from the practice of law shall continue indefinitely.
ATTORNEY SUSPENDED TWO YEARS WITH CONDITIONS TO READMISSION.

APPENDIX

COMMISSIONER'S REPORT
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this proceeding against Charles Williams, a/k/a Charles T. Williams, a member of said Association. This Committee had previously conducted an investigation of respondent's alleged misconduct in accordance with Article 15, Section 3 of the articles of incorporation of the Association. Notice of eight specifications of misconduct was sent to respondent by certified mail dated January 3, 1985. Notice of two additional specifications was sent to respondent by certified mail dated April 2, 1985.
Formal investigatory hearings were held on March 28 and June 3, 1985. Respondent was present at the hearings and testified in his own behalf. A commissioner was appointed on December 2, 1985. The commissioner's hearing was held on January 28, 1986. Respondent was present and testified. At the hearing the entire record of the matter as filed in the Supreme Court was admitted into evidence.

Specification No. 1,

Disciplinary Rules 1-102 and 5-104(A)

SPECIFICATION NO. 1COMMITTEE FILE NO. 7629
That in your capacity as Attorney at Law you were retained by Mary J. Hollander to represent her in certain legal matters. That in connection with her legal matters a settlement was reached in her favor. That at the time of settlement you requested that she loan you $5,000.00.
You executed an unsecured note in the amount of $5,000.00. That you provided your client with an address and a phone number where she could contact you. That the telephone number you provided her was inaccurate and you never returned any of her letters. That one of the stipulations of the note was that payments were to be made commencing May 1, 1984 and that failure to pay any installment rendered the entire note due. That you have failed, neglected, and refused to make any payment on the note. That you obtained the loan based upon the trust that your client had in you as her attorney and that your conduct as detailed above is in violation of Disciplinary Rules 1-102 and 5-104(A) of the Code of Professional Responsibility of the Louisiana State Bar Association.

*731 Specification No. 9
Disciplinary Rules 1-102(A) and 2-106(A)
SPECIFICATION NO. 9 COMMITTEE FILE NO. 7629
In connection with the settlement of Mary J. Hollander's late husband's workmen's compensation case, you did take as a fee an amount in excess of the statutoryly established fee for workmen's compensation cases in violation of DR 1-102(A) and DR 2-106(A) of the Code of Professional Responsibility of the Louisiana State Bar Association.

FINDINGS OF FACT
1) Mary Hollander hired respondent to represent her in a workmen's compensation action against her husband's employer, Magnolia Transit.
2) The case was settled out of court in January 1984 for the sum of $40,000.00.
3) Respondent had a 20% contingency contract with Mrs. Hollander.
4) Respondent was paid an $8,000.00 fee by Mrs. Hollander.
5) At the time of the settlement, respondent borrowed $5,000.00 from Mrs. Hollander, evidenced by a promissory note, Exhibit C-27, that had no provision for interest, though it did contain a 20% attorney's fee clause if placed in the hands of an attorney for collection. The note was due May 1, 1984.
6) Mrs. Hollander loaned Mr. Williams the money because he was her attorney and she trusted him.
7) Respondent did not advise Mrs. Hollander to seek the advice of another attorney before making the loan.
8) Mr. Williams testified at the committee hearing and at the commissioner's hearing that no repayments had ever been made on the $5,000.00 loan, despite demands from Mrs. Hollander.
9) At the committee hearing on June 3, 1985, respondent testified he overcharged Mrs. Hollander by $3,000.00 on the workmen's compensation case, in violation of R.S. 23:1141, but that he would repay her.
10) At the commissioner's hearing, respondent testified he had not repaid the $3,000.00.
11) The applicable disciplinary rules provide:
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 5-104 Limiting Business Relations with a Client.
(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.
DR 2-106 Fees for Legal Services.
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
12) By respondent's own admission, he borrowed funds from his client without advising her to seek independent legal advice. He has not repaid those funds. He admitted charging his client an excessive fee, that he also has not repaid. The client only loaned the funds to respondent because of the attorney-client relationship and because of the [Omission in Original] proved violations of DR 1-102, DR 5-104(A), and DR 2-106(A).

CONCLUSIONS OF LAW
1) The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. LSBA v. Bosworth, 481 So.2d 567 (La.1986).
2) The commissioner concludes that the bar association has proved the stated violations by overwhelming evidence.

Specification No. 2

Disciplinary Rules 1-102, 6-101(A)(3) and 9-102

SPECIFICATION NO. 2 COMMITTEE FILE NO. 7345
In connection with the above numbered Committee file, it has been alleged:

*732 That in your capacity as Attorney at Law you were hired by Clifford H. Thompson to represent him in the filing of a civil suit for damages for illegal eviction. That in connection with your agreement to represent him in this matter, you accepted the sum of $100.00 which was to be used for filing fees for the lawsuit. That despite the efforts and requests of your client, you have failed, refused, and neglected to file said lawsuit. That you have refused to return the said $100.00 to your client and have converted it to your own use.

FINDINGS OF FACT
1) On September 8, 1982, Clifford Thompson approached respondent about representing him in an illegal eviction suit against his landlord, Mrs. J.V. Mann.
2) Thompson paid respondent $100.00 and received a receipt with the notation, "On account of filing suit against Mrs. J.V. Mann."
3) The claim for damages was about $1,500.00.
4) No suit was ever filed.
5) Thompson tried to reach respondent about three times to discuss the matter and was told by respondent that he was giving Mrs. Mann time to get an attorney.
6) Respondent stated the $100.00 was his fee for writing a letter to Mrs. Mann and for advising Thompson on how to file a claim in small claims court.
7) Thompson denied respondent ever told him anything about small claims court or that any letter was ever sent.
8) Respondent testified he thought the matter could be resolved out of court because the parties knew each other.
9) Respondent had no file on the matter.
10) The applicable disciplinary rules provide:
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudical to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 6-101(A)(3) Failing to Act Competently.
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.
DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
11) The commissioner finds that respondent was paid $100.00 by Thompson to file suit on his behalf with respect to the eviction. It is not clear whether this was respondent's fee, or merely an advance for costs, a filing fee. No suit was filed. Accordingly, the commissioner finds a violation of DR 6-101(A)(3) in that respondent neglected a legal matter entrusted to him. The commissioner finds a violation of DR 1-102 in that respondent was deceitful to Mr. Thompson by means of the excuses that he offered Mr. Thompson. The commissioner finds *733 no violation of DR 9-102 because of the conflicting testimony.

CONCLUSIONS OF LAW
1) The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. LSBA v. Bosworth, 481 So.2d 567 (La.1986).
2) The commissioner concludes that the bar association has proved a violation of DR 6-101(A)(3) and DR 1-102 by clear and convincing evidence.
Specification No. 3
Disciplinary Rule 1-102
SPECIFICATION NO. 3 COMMITTEE FILE NO. 7143
In connection with the above numbered Committee file, it has been alleged:
That you issued a check on a Hibernia Bank account entitled, Charles T. Williams, Attorney at Law, to one Jessie Buras dated January 3, 1982, in the amount of $50.00. That you did issue a check on a Whitney National Bank account entitled, Charles T. Williams, Attorney, dated February 17, 1983, a check in the amount of $275.00 paid to the order of Jessie James Buras. That at the time you issued those checks, there was not sufficient funds on deposit to pay those checks. That in spite of demands you have failed to make these checks good.

FINDINGS OF FACT
1) David Krache, Assistant Vice President of Hibernia National Bank, identified a copy of a check for $50.00 drawn on the account of Charles T. Williams, Attorney at Law, signed by Charles T. Williams, payable to Jessie Buras.
2) Krache was unable to testify why or if the check was returned or dishonored.
3) Linda Travis, owner/operator of a grocery store in Bogalusa, testified she cashed a check for $275.00 drawn on the account of Charles T. Williams, Attorney, signed by Charles T. Williams and payable to Jessie James Buras. The funds were given to Mr. Buras.
4) The check was returned twice by the Whitney National Bank marked NSF.
5) Mrs. Travis called the bank three other times but there were never sufficient funds in the account.
6) Respondent testified he did not have sufficient funds in the account when he wrote the check.
7) Respondent testified he had more checks than that that bounced, but that he usually paid most of the people off.
8) At the time of the committee hearings, the check had not been made good.
9) At the commissioner's hearing, respondent testified that to the best of his knowledge, the $275.00 check had been paid by Jessie Buras, though he had no evidence of this.
10) The applicable disciplinary rule provides:
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
11) The commissioner finds that respondent by his own admission, has violated DR 1-102 in that he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation and in conduct that adversely reflects on his fitness to practice law.

CONCLUSIONS OF LAW
1) The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. LSBA v. Bosworth, 481 So.2d 567 (La.1986).
2) The commissioner concludes that the bar association has proved a violation of DR 1-102 by clear and convincing evidence.
Specification No. 4
Disciplinary Rules 1-102, 6-101(A)(3) and 9-102
SPECIFICATION NO. 4 COMMITTEE FILE NO. 7158
In connection with the above numbered Committee file, it has been alleged:

*734 That in your capacity as Attorney at Law you were hired to represent one Deletha Dean in a matter of post-conviction relief or Habeaus Corpus. That in connection with said representation you were paid $500.00 on April 20, 1982. That despite the efforts of your client you have failed, refused, and neglected to file a petition for post-conviction relief and/or a Writ of Habeaus Corpus. It is further alleged that despite requests and demands to do so you have failed to return the $500.00 which was paid to you in this matter and that you have converted said $500.00 to your personal use.
That the above conduct, if proven, would be in violation of Disciplinary Rules 1-102, 6-101(A)(3) and 9-102 of the Code of Professional Responsibility of the Louisiana State Bar Association.

FINDINGS OF FACT
1) Respondent was hired to represent Deletha Dean in a matter of post-conviction relief by Ms. Dean's mother and brother, Mae and Chester Henry.
2) The total fee was to be $800.00. $500.00 was paid to respondent in April 1982.
3) Ms. Dean testified she received a copy of the habeas petition, but no hearing was held on the petition.
4) Chester Henry stated he got a copy of the petition from the Clerk of Criminal District Court.
5) Respondent testified he filed a petition for habeas corpus relief on behalf of Ms. Dean.
6) The clerk's record on Deletha Dean, as admitted in these proceedings, does not contain a copy of a habeas petition.
7) Respondent has not been able to supply a copy of the petition.
8) Respondent testified he spoke to Judge McKay about the matter but was reluctant to schedule the matter for hearing for fear that it would be denied.
9) Chester Henry testified he asked respondent for the $500.00 back because he was not satisfied with the service he received from respondent.
10) Respondent did not repay the $500.00.
11) The applicable disciplinary rules are:
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 6-101(A)(3) Failing to Act Competently.
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.
DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
*735 12) The commissioner finds that the testimony is in conflict about the filing of the petition and the services to be rendered by respondent.
13) Based on the testimony, the commissioner finds that respondent did render some service to Ms. Dean and her family, and that a petition was filed, though no hearing was ever held.

CONCLUSIONS OF LAW
1) The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. LSBA v. Bosworth, 481 So.2d 567 (La.1986).
2) The commissioner concludes that the bar association has not proved a violation of the applicable rules by clear and convincing evidence.
Specification No. 5
Disciplinary Rules 1-102(A), 7-102(A), (B) and 9-102
SPECIFICATION NO. 5 COMMITTEE FILE NO. 6709
In connection with the above numbered Committee file, it has been alleged:
That in your capacity as Attorney at Law you were hired to represent one David M. Howard in a workmen's compensation case. That in connection with this representation you reached a settlement with the workmen's comp. insurer. That in connection with said lawsuit and settlement you did, or caused to be done, or had knowledge of the signing of the name of David M. Howard to certain legal documents to be filed in Court which were, in fact, signed by somebody other than David M. Howard. That you did not inform David M. Howard of the settlement nor the receipt of funds. That said funds were not deposited in a trust account and that you did, in fact, convert said settlement to your own personal use.
That the above conduct, if proven, would constitute violations of Disciplinary Rules 1-102(A), 7-102(A) (B) and 9-102 of the Code of Professional Responsibility of the Louisiana State Bar Association.

FINDINGS OF FACT
1) David M. Howard testified that he retained respondent to represent him in a workmen's compensation suit.
2) Howard testified that he signed various papers in connection with the suit, and that he sometimes signed with either hand, since his left hand was injured.
3) Howard testified he signed the settlement check for $1,740.00, but that he received cash for his portion of the claim which amounted to $1,080.00 after all costs were paid.
4) Howard stated he believed he signed the affidavit attached to the petition, but could not identify it as his signature since he usually did not write that small.
5) The applicable disciplinary rules are:
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 7-102(A), (B) Representing a Client Within the Bounds of Law.
(A) In his representation of a client, a lawyer shall not:
(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.
(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.
(4) Knowingly use perjured testimony or false evidence.
(5) Knowingly make a false statement of law or fact.
(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.
(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

*736 (8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.
(B) A lawyer who receives information clearly establishing that:
(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal.
(2) A person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal.
DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
6) The commissioner finds that Howard did receive his settlement funds, that respondent did not convert them to his own use.
7) The commissioner finds the testimony in conflict as to the validity of Howard's signature on various documents.

CONCLUSIONS OF LAW
1) The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. LSBA v. Bosworth, 481 So.2d 567 (La.1986).
2) The commissioner concludes the bar association has not proved a violation of the applicable disciplinary rules by clear and convincing evidence.
Specification No. 6
Disciplinary Rules 5-103 and 1-102
SPECIFICATION NO. 6 COMMITTEE FILE NO. 7107
In connection with the above numbered Committee file, it has been alleged:
That in your capacity as Attorney at Law you did give or loan to one Hollis Corkern the sum of $500.00 in order to have said Hollis Corkern obtain your legal services and to discharge his prior counsel in violation of Disciplinary Rules 5-103 and DR 1-102 of the Code of Professional Responsibility of the Louisiana State Bar Association.

FINDINGS OF FACT
1) Don Arata, an attorney, represented Hollis Corkern in a workmen's compensation suit.
2) Arata had filed the appropriate papers to get the case started when he was dismissed by Mr. Corkern.
3) Arata was evantually contacted by Mr. Williams and told that the case was to be settled and that Arata would receive a $550.00 fee.
4) Arata never received the fee.
5) When Corkern came to Arata's office about a car title, Corkern told Arata that Williams had loaned him $500.00 that did not have to be repaid.
6) Arata had Corkern sign a notarized statement to that effect.
7) Corkern identified his signature on the document, but stated he had signed a blank piece of paper.
*737 8) Corkern denied that respondent loaned him $500.00, but did state respondent loaned him $55.00 for a motel room.
9) The applicable disciplinary rules are:
DR 5-103 Avoiding Acquisition of Interest in Litigation.
(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:
(1) Acquire a lien granted by law to secure his fee or expenses.
(2) Contract with a client for a reasonable contingent fee in a civil case.
(B) While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that the lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
10) The commissioner finds the testimony conflicting on the matter of the $500.00 loan.

CONCLUSIONS OF LAW
1) The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. LSBA v. Bosworth, 481 So.2d 567 (La.1986).
2) The commissioner concludes the bar association has not proved a violation of the applicable rules by clear and convincing evidence.
Specification No. 7
Disciplinary Rule 1-102
SPECIFICATION NO. 7 COMMITTEE FILE NO. 7312
In connection with the above numbered Committee file, it has been alleged:
That in your capacity as Attorney at Law you did file a petition numbered 261-837 in the 24th Judicial District Court for the Parish of Orleans entitled, Hancell G. Reddick and General Motors Acceptance Corporation vs. Western Preferred Casualty Company, et al. That you did file such petition alleging that you represented General Motors Acceptance Corporation when, in fact, you were without authority, consent, or approval to represent General Motors Acceptance Corporation in said action.
That, if proven, the alleged conduct is in violation of Disciplinary Rule 1-102 of the Code of Professional Responsibility of the Louisiana State Bar Association.

FINDINGS OF FACT
1) Respondent testified that because the suit involving Hancell G. Reddick and General Motors Acceptance Corporation vs. Western Preferred Casualty Company, et al, was about to prescribe, he received oral permission from someone in the GMAC office on Veterans Boulevard to include them in the suit.
2) Respondent testified he thought it was a supervisor or manager who gave the permission.
3) Respondent never charged GMAC for the representation.
4) Arthur Mann, GMAC's regular attorney, testified it would be possible for someone at GMAC to authorize representation of GMAC by any attorney they chose.
5) Respondent could not recall the person who authorized his representation, nor could he produce a statement from any person to that effect.
6) The applicable disciplinary rule is:
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

*738 (5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
7) The commissioner finds the testimony in conflict as to respondent's representation of GMAC.

CONCLUSIONS OF LAW
1) The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. LSBA v. Bosworth, 481 So.2d 567 (La.1986).
2) The commissioner concludes the bar association has failed to prove its case by a preponderance of evidence.
Specification No. 8
Disciplinary Rule 1-102(A)
SPECIFICATION NO. 8 COMMITTEE RULE NO. 6494
In connection with the above numbered Committee file, it has been alleged:
That in your capacity as Attorney at Law you did represent one Hancell Buras on a criminal matter assigned magistrate number 102740 on or about September of 1980. That in connection with such representation, and in connection with acquiring and posting of bond on behalf of your client, you did knowingly provide false information concerning ownership of a certain piece of property located on St. Bernard Avenue in the City of New Orleans. That you swore to the bond clerk of the Criminal District Court that you owned the property when, in fact, it was owned by someone else, also named Charles Williams.
That said conduct, if proven, would constitute a violation of Disciplinary Rule 1-102(A) of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specification No. 10
Code of Criminal Procedure Article 326 and Disciplinary Rule 1-102(A)
SPECIFICATION NO. 10 COMMITTEE FILE NO. 6494
In connection with your representation of one Hancell Buras on a criminal matter magistrate number 102740, you did act as bondsman and/or surety for Hancell Buras in violation of the Code of Criminal Procedure, Article 326 and DR 1-102(A) of the Code of Professional Responsibility of the Louisiana State Bar Association.
That the above alleged conduct, if proven, would constitute serious misconduct on your part and would be in violation of the Provisions of the Code of Professional Responsibility of the Louisiana State Bar Association.

FINDINGS OF FACT
1) Respondent represented his brother, Hancell Buras, on a charge of armed robbery.
2) In connection with getting Mr. Buras released on bond, respondent swore to the bond clerk of Criminal District Court that he was the owner of the property at 4727 St. Bernard Avenue.
3) Respondent signed his name in two places and signed the address 4727 St. Bernard Avenue in two places on a bail order on September 28, 1980.
4) At the time respondent signed the order, he knew he did not own the property at 4727 St. Bernard Avenue, that in fact it belonged to someone else named Charles Williams.
5) At the time respondent acted as Buras' bondsman and/or surety, he was ignorant of the Code of Criminal Procedure prohibition against an attorney acting as a bondsman.
6) The applicable disciplinary rules are: Code of Criminal Procedure Article 326 Those who may not be surety or provide bail.
A person shall not be released on bail for which an attorney at law, a judge, or ministerial officer of a court becomes a surety or provides money or property for bail; but the invalidity of such bail shall not be a defense to an action to forfeit and enforce the bail.
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
*739 7) The commissioner finds that based on his own admissions, respondent violated the applicable disciplinary rule and code section.

CONCLUSIONS OF LAW
1) The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. LSBA v. Bosworth, 481 So.2d 567 (La.1986).
2) The commissioner concludes the bar association has proved these specifications by clear and convincing evidence.

RECOMMENDATION
The purposes of a disciplinary proceeding are to evaluate the character of a lawyer, in the light of his conduct and background, to determine whether he is morally fit to continue in the practice of law; and to remove him from the profession if he is unable or likely to be unable to discharge his professional duties; or, if the lawyer is reformable, to impose a suspension or other sanction to correct and deter the errant attorney, deter other lawyers from similar misconduct, and recompense for the damage done to the legal profession and the administration of justice. LSBA Arts. of Incorp., Art. XV, §§ 5, 6 and 8; LSBA v. Bensabat, 378 So.2d 380 (La. 1979); LSBA v. Philips, 363 So.2d 667 (La.1978); LSBA v. Gremillion, 320 So.2d 171 (La.1975); LSBA v. Weysham, 307 So.2d 336 (La. 1973).
Whether a person is of good moral character is decisive of his admission to the bar, his disbarment, or his reinstatement. LSBA Arts. of Incorp., Arts. 14 § 7; Art. 15 §§ 6, 8(b)(1)[12(b)(1)]. Although the term "good moral character," by itself, is ambiguous and can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law, it has long been recognized as a legitimate qualification for membership in the Bar and has served a useful purpose in this respect. See Konigsberg v. State Bar of California, 353 U.S. 252 [77 S.Ct. 722, 1 L.Ed.2d 810] (1957); Hood, Renewed Emphasis on Professional Responsibility, 35 La.L.Rev. 719, 723 (1975).
In a disciplinary proceeding the court decides whether an attorney found guilty of misconduct is morally fit to continue in practice primarily by evaluating his understanding of and dedication to the ethical precepts of his profession as well as his inner strength and resolve to adhere to them in the future. When a lawyer violates his fiduciary responsibility to his client the main bases for this evaluation are the nature and circumstances of his offense. If his violation was intentional, or grossly negligent, that fact may indicate a lack of strong dedication to his client's interest or to the ideals of his profession. The commission of a forgery or other offense in connection with a conversion or commingling shows that the attorney not only had little regard for the client's interest, but also that he deliberately violated it. That the attorney made restitution after his misconduct may be considered in mitigation, and reimbursement made prior to the filing of a disciplinary complaint or commencement of legal proceedings can be a reliable indicator of conscience and moral character. Similarly, an attorney's prompt compliance with his client's request to turn over funds or property is much more indicative of good character than is a tardy compliance after many requests. The magnitude of the damage or the risk of damage to the client, the profession or the administration of justice resulting from the attorney's infraction may indicate the degree of his lack of commitment to professional responsibility. Other factors, such as the attorney's previous disciplinary record, his cooperation in the disciplinary proceedings, his reputation among his peers and in the community, and his age, health and experience are taken into consideration to illumine the attorney's conduct and moral character.
In the instant proceedings, the commissioner has found the Supreme Court's recent decisions in the Williams, Bosworth, and Hinrichs cases most helpful. Like LSBA v. Bosworth, 481 So.2d 567 (La.1986), respondent borrowed funds from his client without advising her to seek outside counsel. Like Bosworth, respondent has yet to repay the loan. Bosworth was suspended from the practice of law until full restitution was made and for a period of six months thereafter.
In LSBA v. Hinrichs, 475 So.2d 749, on rehearing 486 So.2d 116 (La. 3/31/86), the attorney commingled and converted a client's funds to his own account. Restitution was made prior to the institution of disciplinary proceedings, but after the institution of a civil suit. Hinrichs received a two year suspension though the court stated a three year suspension would have been appropriate.
In LSBA v. Williams, 479 So.2d 329 (La.1985), the attorney issued NSF checks, neglected legal matters entrusted to him and converted and commingled clients' funds. Restitution was made to clients on the commingling and conversion charges, but not to the non-clients on the NSF check charges. The court noted that a pattern of NSF checks is conduct, which at the very least, clearly reflects adversely on fitness to practice law. Williams was ordered disbarred.
*740 In Hinrichs the court discussed the various sanctions to be imposed depending on the circumstances of the case. Respondent has yet to make restitution to his client, Mrs. Hollander, on either the $5,000 loan or the $3,000 excessive fee. At the various hearings, respondent admitted to issuing NSF checks, but said he usually made them good, though there was not evidence that he had done so here. Respondent neglected legal matters entrusted to him, and put his clients off with various excuses. In connection with the posting of bond, respondent provided false information as to the ownership of property and falsely swore that he owned the property, when in fact, it was owned by someone else named Charles Williams.
Based on the accumulation of the above specifications, it is the commissioner's recommendation that Charles T. Williams be suspended from the practice of law in Louisiana until he furnishes proof to the Court that restitution has been made for the $5,000 loan and the $3,000 excessive fee from Mary Hollander, that restitution has been made on the $275 check to Jessie Buras, negotiated at the Travis Grocery in Bogalusa, and for a period of two years thereafter.
 Anita M. Warner
 ________________________
 925 Common Street,
 Suite 825
 New Orleans, Louisiana
 70112
 Telephone: (504) 522-0807
NOTES
[*] Pike Hall, Jr., Associate Justice pro tempore, in place of Mr. Justice Lemmon.