ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.
This disciplinary matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Charles Williams. We previously suspended respondent from practice for a minimum term of two years. Louisiana State Bar Ass’n v. Williams, 498 So.2d 727 (La.1986) (“Williams F). Our judgment in Williams I provided that respondent could petition for and obtain reinstatement at the end of the two-year period, provided" that he had fulfilled certain conditions;[1] however, if respondent *354 had not fulfilled all of the specified conditions, “his suspension from the practice of law shall continue indefinitely.” 498 So.2d at 730. To date, respondent has not complied with the conditions set forth in Williams I, and accordingly, he remains suspended from the practice of law.
UNDERLYING FACTS
On April 8, 1998, while employed as a paralegal by the Law Office of Louis A. Gerdes, Jr., respondent accompanied two of the firm’s clients to sworn statements taken by counsel for the insurance company in a personal injury claim. Respondent actively participated in the sworn statements, indicated that he is an attorney, and advised the clients how to answer questions asked of them.
Lin addition, during the course of the ODC’s investigation of this matter, respondent was requested on several occasions to schedule a meeting with the ODC. Respondent did so, but he failed to appear on any occasion, including a meeting for which he had been ordered to appear pursuant to a subpoena.
DISCIPLINARY PROCEEDINGS
On December 28, 1999, the ODC filed one count of formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 5.5(a) (engaging in the unauthorized practice of law), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(g) (failure to cooperate with the ODC in its investigation).
Attempts by the ODC to serve respondent with the formal charges were initially unsuccessful. Following this court’s appointment of a curator to facilitate service,[2] respondent was personally served with the formal charges on April 10, 2001. Respondent answered the charges and essentially denied any misconduct. Specifically, respondent stated he has not “done anymore depositions nor do I intend to do any more depositions, since counsel for the other party seemingly tried to get me to admit, I was a lawyer, by trickery.” Respondent also denied that he failed to cooperate with the ODC, pointing out that he had recently been living out of state but that “Mr. Gerdes knew how to contact me.”

13Hearing Committee Recommendation

This matter proceeded to a formal hearing on the merits on June 18, 2001. At the hearing, respondent admitted the misconduct charged in the formal charges. He also consented to the introduction of the ODC’s documentary evidence, including the transcripts of the two sworn statements respondent attended and participated in on behalf of clients of Mr. Gerdes.[3] *355 The transcripts reveal that on April 8, 1998, respondent accompanied Ms. Raas-hand Frazier to a sworn statement taken by William Stephens, counsel for GEICO Insurance Company, in connection with a personal injury claim. At the beginning of the statement, the following colloquy took place on the record:
By Mr. Stephens: Good afternoon. My name is Bill Stephens, and I represent GEICO Insurance Company. Before we get started, we’re just going to get a couple [of] prerequisites done. First of all, just for the record, I’d like to know who is appearing.
[[Image here]]
By Mr. Williams: Charles Williams, standing in for Louis Gerdes.
By Mr. Stephens: Mr. Williams, you are an attorney?
By Mr. Williams: Yeah.
Respondent went on to actively participate in the statement, including advising Ms. Frazier how to answer several questions asked of her by Mr. Stephens.
|40n the same day and in connection with the same personal injury claim, Ms. Frazier’s mother, Sandra Frazier, also gave a sworn statement. Respondent did not correct Mr. Stephens when he stated on the record that respondent “is acting as [Mrs. Frazier’s] attorney in this particular matter.” Furthermore, as respondent had done during the statement given by Ms. Frazier, he advised Mrs. Frazier how to answer several questions asked of her by Mr. Stephens.
Before the hearing committee, respondent testified that Mr. Gerdes frequently asked him to “cover” .depositions, and he claimed he was present at the two Frazier sworn statements as Mr. Gerdes’ “agent.” Respondent suggested that he remained silent throughout most of the proceeding, and claimed that when he did speak, he did not violate the Rules of Professional Conduct or this court’s rule relating to “paralegals and their participation in depositions”[4] because he did not offer “specific legal advice.” Respondent also claimed that he did not accept any money from these clients under the false pretense that he is a practicing lawyer. When asked specifically about his affirmative response in Ms. Frazier’s statement to the question, “Are you an attorney?” respondent admitted that he should have responded in such a manner to make it clear that he is not a practicing attorney; however, respondent maintained that he is, in fact, an attorney because he graduated from law school and passed the bar examination. Respondent testified that he thought opposing counsel was making fun of him and was trying to belittle him by asking whether he is an attorney.
Following respondent’s admission to the formal charges, the hearing was converted to a hearing in mitigation. The only mitigating evidence offered by respondent at the hearing was his testimony that his wife died in December 1996 after |Ka long battle with breast cancer. In a post-hearing memorandum, respondent suggested he had other personal problems that should be considered in mitigation, including a 1987 automobile accident that killed his half-sister and caused his brother to suffer severe brain damage, and the 1993 and 1994 deaths of two brothers-in-law.
*356 After considering the record, the committee found the factual allegations contained in the formal charges were proven by clear and convincing evidence, and that respondent violated the professional rules as charged. The committee found that respondent violated duties owed primarily to the profession and to clients. Rejecting respondent’s contention that there is an “overlap” between the roles of attorneys and paralegals, the committee concluded respondent’s conduct and his representations that he is an attorney were willful and knowing. The committee noted that this court has routinely imposed suspension as the minimum sanction in cases in which an attorney has engaged in the practice of law while ineligible to practice for any reason.[5]
In aggravation, the committee noted respondent’s prior disciplinary record, as well as a pattern of misconduct and multiple offenses. The committee recognized that mitigating factors may exist in the form of the personal problems cited by respondent, but it ultimately gave no consideration to these circumstances because they are too remote in time to the offenses committed by respondent in 1998. In light of the substantial aggravating factors present, and considering the absence of mitigating factors, the committee concluded there is no reason to impose a sanction in this case less than the one year and one day suspension ordered in In re: Brough, 98-0366 (La.4/3/98), 709 So.2d 210.
Based on this reasoning, the committee recommended that respondent be suspended from the practice of law for one year and one day. The committee further | firecommended that this period of suspension commence to run after respondent has satisfied the conditions of the two-year suspension imposed in Williams I.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.

Disciplinary Board Recommendation

The disciplinary board generally agreed with the hearing committee’s factual findings and its application of the Rules of Professional Conduct. The board found that respondent has violated duties owed to the profession and to clients. The board noted that respondent’s conduct was knowing and caused injury to the clients of the Gerdes firm. The board agreed with the hearing committee’s finding that no mitigating factors exist; however, the board did not agree with the committee’s assessment of the aggravating factors. The board found the following aggravating factors are supported by the record: prior disciplinary offenses, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and substantial experience in the practice of law (admitted 1977).
Turning to the issue of an appropriate sanction, the board agreed that the baseline for respondent’s misconduct is a suspension under Standard 7.2 of the ABA’s Standards for Imposing Lawyer Sanctions.[6] The board noted the relevant jurisprudence, including the Brough, Withers, and Ellis cases cited by the hearing committee, also supports a suspension. *357 Because respondent’s misconduct in this matter involves two instances of the unauthorized practice of law, as well as misrepresentation and failure to cooperate with the ODC, and considering the ^aggravating factors present, the board determined that the more stringent sanction of Brough—a one year and one day suspension from the practice of law—is warranted here.
Accordingly, the board recommended that respondent be suspended for one year and one day. The board further recommended that this period of suspension commence to run upon the finality of this court’s judgment.[7] Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC filed an objection in this court to the disciplinary board’s recommendation; however, pursuant to Supreme Court Rule XIX, § 11(G)(1)(a), we ordered the parties to submit written briefs addressing the appropriateness of the proposed sanction.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
IsThe evidence in the record demonstrates respondent engaged in the unauthorized practice of law in connection with his participation in the sworn statements of Ms. Raashand Frazier and Mrs. Sandra Frazier. In both matters, respondent implied he was authorized to practice law, and at no time informed the court reporter or the opposing counsel that he was suspended from practice. Moreover, in both matters, respondent acted as an attorney by asking questions of the persons being deposed.
Having found professional violations, we now turn to a determination of the appropriate sanction for this misconduct. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The unauthorized practice of law by a suspended or disbarred attorney is very serious misconduct. Our legislature has made it a felony to engage in such *358 conduct. La. R.S. 37:213. Likewise, we have listed unauthorized practice of law by a suspended or disbarred attorney as a possible ground for permanent disbarment under the Guidelines Depicting Conduct Which Might Warrant Permanent Disbarment contained in Appendix E to Supreme Court Rule XIX.[8]
|9In general, when the attorney has manifested a conscious intent to flout the authority of this court by practicing after being prohibited from doing so, we have not hesitated to impose disbarment. See, e.g., In re: Jones, 99-1036 (La.10/19/99), 747 So.2d 1081 (attorney disbarred for engaging in the unauthorized practice of law on four occasions, after being suspended in the past for similar misconduct). However, not all instances of the unauthorized practice of law warrant the most severe sanction. For example, in In re: Ellis, 99-2483 (La.9/15/99), 742 So.2d 869, we imposed a ninety-day suspension on a previously suspended attorney who failed to remove the “attorney at law’’ designation from his office. See also In re: Withers, 99-2951 (La.11/19/99), 747 So.2d 514 (attorney suspended for six months, followed by an eighteen-month period of probation, for representing a client while ineligible to do so).
The instant case falls somewhere between those two extremes. There is no indication from the record that respondent consciously attempted to practice law in blatant disregard of the orders of the court; on the other hand, it appears respondent’s actions were more deliberate and far-reaching than the actions of the respondent in Ellis.
Under these circumstances, we find the appropriate baseline sanction is a two-year period of suspension. However, in mitigation, we conclude that respondent lacked a dishonest or selfish motive, in that he received no benefit from his appearance at the two sworn statements. Accordingly, we will defer all but one year and one day of the suspension. If and when respondent applies for reinstatement to the practice of law, he shall satisfy all conditions set forth by this court in Williams I. If reinstatement is granted, respondent shall be placed on supervised probation for a period of one year.
ImDECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is ordered that Charles Williams be suspended from the practice of law in Louisiana for a period of two years. It is further ordered that all but one year and one day of this suspension shall be deferred. If and when respondent applies for reinstatement to the practice of law, he shall satisfy all conditions set forth by this court in Louisiana State Bar Ass’n v. Williams, 498 So.2d 727 (La.1986). If reinstatement is granted, respondent shall be placed on supervised probation for a period of one year. Any misconduct during that time will be grounds for making the deferred portion of the suspension ex-ecutory. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. These conditions included the following: (1) restitution of $8,000 to Mary Hollander; (2) restitution of $275 to the owners of Travis Grocery and Market in Bogalusa; (3) attain *354 ment of a satisfactory score on the Multistate Professional Responsibility Examination; and (4) payment of all costs of the proceedings.

. See In re: Williams, 01-0043 (La.2/9/01), 780 So.2d 348.

. The formal charges against respondent relate solely to his conduct in connection with the sworn statements of Ms. Raashand Frazier and Mrs. Sandra Frazier, which are discussed at length in this opinion. However, at the formal hearing, evidence was introduced relating to other similar misconduct by respondent not charged in the formal charges. As this court has previously held, it would be a denial of due process of law to find respondent guilty of charges based on evidence adduced at the hearing if he was not given notice of these charges prior to the hearing. See In re: Nevitte, 02-1962 (La.9/30/02), 827 So.2d 1135. Accordingly, we have not considered the uncharged conduct in this case and have made no reference to it in this opinion.

. We know of no such rule. However, we recently amended Rule 5.5 of the Rules of Professional Conduct to impose certain requirements upon attorneys who hire suspended lawyers in any capacity in connection with the practice of law. For purposes of the rule, the "practice of law” is specifically defined to include “[a]ppearing as a representative of the client at a deposition or other discovery matter.”

. The committee cited In re: Withers, 99-2951 (La.11/19/99), 747 So.2d 514 (six-month suspension); In re: Ellis, 99-2483 (La.9/15/99), 742 So.2d 869 (90-day suspension); and In re: Brough, 98-0366 (La.4/3/98), 709 So.2d 210 (one year and one day suspension).

. Standard 7.2 provides that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

. The board did not adopt the hearing committee’s recommendation that the suspension commence to run after respondent has satisfied the conditions in Williams I, stating that such a recommendation "does not give the parties or the Board an official starting date for the suspension.”

. Guideline 8 of Appendix E provides:
Following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred.