ATTORNEY DISCIPLINARY PROCEEDINGS
LPER CURIAM.
This disciplinary matter arises from three counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Inez Frances Kerth, an attorney licensed to practice law in the State of Louisiana.
PROCEDURAL HISTORY
Some background information is necessary to understand the long and complicated history of these proceedings. On June 30, 1997, the ODC filed two counts of formal charges against respondent, arising out of the Anglin matter. Count I alleged that respondent failed to diligently pursue her client’s legal matter and failed to promptly refund an unearned legal fee. Count II alleged that respondent failed to *22 cooperate with the ODC in its investigation of the complaint filed against her.
Respondent answered the formal charges and denied any misconduct. The matter was set for a formal hearing before a hearing committee in November 1997. The hearing was continued, however, when additional complaints involving respondent came to the ODC’s attention.
The additional complaints became the subject of supplemental and amending formal charges filed by the ODC on August 10, 1998. The amended formal charges originally consisted of two counts. Count III alleged that respondent failed to communicate with a personal injury client and failed to return the chent’s file upon | prequest. Count IV alleged that respondent commingled and converted client funds and failed to cooperate with the ODC in its investigation of her trust account practices.
Respondent answered the amended formal charges and denied any misconduct. The four counts of formal charges then pending against respondent were set for a formal hearing before a hearing committee in December 1998. That hearing was also continued, this time to allow the parties to negotiate discipline by consent. In connection with one such attempt, the ODC dismissed Count III of the supplemental and amended formal charges. Accordingly, that count is not discussed further herein.
On September 13, 2001, when the parties’ efforts at consent discipline had proven fruitless, the disciplinary board remanded the case for a hearing before a hearing committee. The hearing was conducted on January 22, 2002.
DISCIPLINARY PROCEEDINGS
The formal charges considered during the January 22, 2002 hearing are as follows: [1]
Count I — The Anglin Matter
In 1988, respondent represented Lois Anglin in an uncontested divorce from William Anglin. Thereafter, in February 1993, Lois retained respondent to complete the community property settlement. William and Lois each paid respondent $250 to handle the matter. Respondent prepared a community property settlement agreement and documents evidencing the sale of various property between William and Lois. |sThe Anglins signed these documents on March 22, 1993. However, respondent did not file or record the documents, and she failed to respond to numerous telephone calls from the Ang-lins concerning the status of the matter. In December 1994, respondent dosed her law office without notice to the Anglins. The Anglins subsequently retained other counsel, who completed the community property partition in October 1996. In January 1999, respondent refunded $250 each to William and Lois Anglin.
The ODC alleged respondent’s conduct violated the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15 (safe *23 keeping property of clients or third persons), 1.16(d) (termination of the representation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count II — Failure to Cooperate
In September 1995, William Anglin filed a complaint against respondent with the ODC. The ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling her to appear on December 6,1995 and answer the complaint under oath. Respondent failed to appear, though she finally responded to the complaint by letter dated January 15, 1996. The ODC requested a supplemental response on February 5, 1996. Respondent failed to provide the response requested. |4As a result, the ODC served respondent with a subpoena compelling her to appear on May 7, 1996.
The ODC alleged respondent’s conduct violated the following provisions of the Louisiana Rules of Professional Conduct: Rules 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation). The ODC further alleged that respondent’s failure to respond to a lawful demand for information from a disciplinary authority constituted a violation of Supreme Court Rule XIX, § 9(c).
Count IV — The Trust Account Matter
In conjunction with its investigation of a complaint filed against respondent, the ODC subpoenaed respondent’s client trust account records from the Whitney National Bank. The bank produced statements covering the period from September 1991 through December 1993. These statements showed a number of discrepancies, including negative balances in the account on numerous occasions between September 1992 and October 1993, and demonstrated that respondent was using her trust account as a personal account. Furthermore, on two occasions in 1993, the balance in the trust account dropped below the amount respondent was holding on her clients’ behalf.[2] The ODC asked respondent to provide an explanation for her improper use of the trust account, but she failed to cooperate in that regard.
|sThe ODC alleged that respondent’s conduct violated the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.15, 8.4(a), 8.4(c), 8.4(d), and 8.4(g).

Review of the Record

The ODC introduced a volume of documentary evidence in support of the formal charges, the allegations of which were essentially admitted by respondent. In mitigation, respondent testified that “a really horriblfe period in my life” began in 1991. In February of that year, respondent’s mother suffered a ruptured colon, and after a lengthy hospital stay and around the clock nursing by respondent, she died in the summer of 1991. Respondent’s father, who had been previously diagnosed with *24 cancer, suffered with his terminal illness until April 1992. By this time, respondent was emotionally and physically exhausted, and her private law practice had declined considerably, giving rise to severe financial problems, including bankruptcy and a potential foreclosure on her home by the IRS. The IRS eventually seized respondent’s bank accounts and garnished the wages she earned as a part-time employee of the Metropolitan Battered Women’s Program. The problem was further compounded when the garnished wages were not timely sent to the IRS, causing respondent to have to pay additional penalties. As a result of her financial problems, respondent had to move her practice to a smaller office. While that move was taking place, respondent’s car and all of her financial records were stolen. Finally, in 1994, respondent’s former fiancé killed himself a few days after seeing respondent for the first time in many years. In December 1994, respondent closed her private law practice; since 1994, she has worked full-time as a staff attorney for the Metropolitan | (¡Battered Women’s Program.[3] Respondent testified at length concerning the community service work she has performed, and she concluded that her life is now “500 million times better than it was” during the period between 1991 and 1994.

Hearing Committee Recommendation

After considering the evidence presented at the hearing, and respondent’s testimony in mitigation, the hearing committee made detailed factual findings, including the following:
1. In July 1988, respondent represented Lois B. Anglin in an uncontested divorce from William H. Anglin. On February 25, 1993, respondent was retained by Lois Anglin to complete the community property settlement. Respondent quoted a fee of $400 plus filing fees, and the Anglins paid a total of $500. Respondent prepared a community property settlement agreement, a sale of property from Lois to William, and a sale of property from William to Lois. The Anglins executed the instruments on March 22, 1993 in respondent’s office. Respondent did not file or record the instruments, and failed to respond to numerous telephone calls from the Anglins as to the status of the matter. Respondent closed her law practice in December 1994, without notice to the Anglins. She did not refund the $500 until January 1999.
2. On September 25, 1995, respondent was served by certified mail with a copy of the complaint filed by William Anglin. Respondent was asked to specifically account for the fee received and any services performed on behalf of Mr. Anglin. The ODC reminded respondent that she should promptly refund any 17unearned portion of the fee. Respondent failed to submit a response to Mr. Anglin’s complaint, and she was personally served with an investigatory subpoena on November 8, 1995. Respondent did not appear at the designated time and place, and on her advice that she was ill but would submit a written response to the complaint by December 11, 1995, the matter was continued. On Janu *25 ary 9, 1996, respondent was reminded that she had not submitted a response to the complaint. On January 12, 1996, she advised the ODC that she would submit a response by January 15, 1996. On January 17, 1996, the ODC again left a message reminding respondent of her failure to submit a response. Respondent’s initial response was received by the ODC on January 18,1996. By letter dated February 5, 1996, respondent was asked to Submit a supplemental response to the complaint. She failed to do so and on April 17, 1996, she was personally served with an investigatory subpoena, by which she was compelled to give a sworn statement on May 7,1996.
3. Respondent’s IOLTA account records for the period September 1, 1991 through December 31, 1993 were obtained from Whitney National Bank by subpoena. At the ODC’s request, Ronald E. White, Audit Consultant, reviewed respondent’s trust account records for 1993. In a report dated April 13, 1998, Mr. White concluded that “respondent used this account as an operating account as well as for personal expenses.” Therefore, commingling occurred every time she deposited client funds into the account. Mr. White found two instances in 1993 where the account balance fell below the amount owed to clients. Respondent’s trust account was closed on March 1,1994.
4. Respondent testified at length about the personal difficulties she encountered during the period of time involved in the matters charged by ODC. Those | sdlfficulties included the long illness and death of her mother in 1991; her subsequent reinvolvement with her.abusive father who himself died in April 1992; the decline and 1994 closure of her private practice; attendant financial difficulties, .including filing personal bankruptcy and IRS seizure of her personal account, which she testified is why she used her exempt client trust account for some personal expenses; the theft of her car, including all her office records which then were kept in it due to her financial distress; the sudden death of a close friend; and the suicide of a former fiancé whom she had just seen.
5. The incidents charged by the ODC occurred during the tail-end of respondent’s private practice. Respondent no longer maintains a private practice; she currently works for the Battered Women’s Program as its only lawyer. Respondent handles battered women’s petitions and related matters, but does not handle money or deal with financial issues.
6. Respondent clearly is committed to the pro bono issues to which she devotes much of her time. She pointed out that her commitment derives in part from her own sometimes turbulent personal experiences. Though her personal situation seems to have stabilized from that she confronted in 1993-94, her testimony was emotionally volatile, fragile, and somewhat ■ histrionic. While that undoubtedly allows respondent to act as an empathetic counselor, it and the extent to which her personal situation deteriorated during the early 1990’s caused the Committee some concern about her ability to handle the affairs of others, as would be required in private practice.
7. Respondent has worked consistently as a volunteer, and later on a low- *26 paid basis, as an advocate for various women’s issues. She has volunteered for the Metropolitan Battered Women’s Program since it started. She has staffed the | (¡Advisory Committee in the Jefferson Parish Coroner’s Office, been appointed to the Governor’s Interagency Committee for the Homeless, NOLAC and supervised Tulane Law Students for community service requirements. She has been widely recognized and lauded for her pro bono efforts.
8. Respondent clearly was remorseful.
Based on these factual findings, the committee determined that respondent neglected the Anglins’ legal matter, failed to communicate with them, and failed to promptly refund an unearned legal fee. The committee also found that respondent failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Anglin. Finally, the committee found that respondent commingled and converted client funds by improperly using her client trust account. Accordingly, the committee determined that respondent violated Rules 1.3, 1.4, 1.5, and 8.4(a) of the Rules of Professional Conduct in connection with Count I of the formal charges; violated Rules 3.4(c), 8.1(c), 8.4(a), and 8.4(g) in connection with Count II; and violated Rules 1.15 and 8.4(a) in connection with Count IV. The committee rejected the remainder of the rule violations charged in the formal charges.
The committee determined the baseline sanction for respondent’s misconduct is a suspension from the practice of law for a period of eighteen months. In aggravation, the committee recognized respon-' dent’s pattern of failing to cooperate with the ODC. As mitigating factors, the committee recognized respondent’s “personal circumstances at the time of the violations, the subsequent voluntary diminution of her practice, her extensive pro bono publico record, her obvious and (the Committee believed, sincere) remorse, and her repayment of the [Anglins’] entire fee (albeit late).”
hoUnder these circumstances, the committee recommended that respondent be suspended from the practice of law for eighteen months, fully deferred, subject to a one-year period of probation governed by specified conditions.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

After reviewing this matter, the disciplinary board agreed that the hearing committee’s factual findings are supported by the record. Applying the Rules of Professional Conduct, the board agreed that respondent violated Rules 1.3, 1.4, 1.5, and 8.4(a) of the Rules of Professional Conduct in connection with the Anglin matter. As to Count II, the board observed that respondent admitted she failed to fully cooperate with the ODC in its investigation of the complaint filed by William Anglin. The board determined this conduct violated Rules 3.4(c), 8.1(b), 8.1(c), 8.4(a), and 8.4(g) of the Rules of Professional Conduct and Supreme Court Rule XIX, § 9(c). Finally, as to Count IV, the board agreed that respondent violated Rules 1.15 and 8.4(a) in mishandling her client trust account. The board determined the remainder of the rule violations charged in the formal charges were not proven by clear and convincing evidence.
The board found respondent knowingly and intentionally violated duties owed to her clients, to the profession, and to the legal system. Ms. Anglin was harmed by respondent’s failure to promptly refund the unearned portion of the legal fee she paid and by the delay in the completion of her community property matter. The dis *27 ciplinary system’s time and resources were wasted by respondent’s failure to cooperate in the Ininvestigation. The potential for serious injury existed when respondent commingled her clients’ property and converted it to her own use.
As aggravating factors, the board recognized respondent’s prior disciplinary offenses,[4] a pattern of misconduct, and bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency. In mitigation, the board recognized respondent’s personal and emotional problems, character and reputation, and remorse. However, the board refused to credit respondent with making restitution to the Anglins, as she did so long after the disciplinary complaint was filed and after having discussions with the ODC concerning the necessity of repayment.
Relying on the ABA’s Standards for Imposing Lawyer Sanctions and the prior jurisprudence, in particular Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), the board agreed that an eighteen-month suspension is appropriate in this case. The board also agreed that deferral of the suspension and probation are appropriate in light of the mitigating factors present.
Accordingly, the board recommended that respondent be suspended from the practice of law for eighteen months, fully deferred, subject to a one-year period of probation governed by specified conditions. The board also recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
| ^Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Respondent has essentially admitted the misconduct charged in the formal charges. The rule violations principally involve failure to communicate with a client, neglect of the client’s legal matter, and failure to promptly refund an unearned legal fee. Respondent also used her client trust account improperly and was less than fully cooperative with the ODC in its attempts to investigate these matters. The sole issue presented for the court’s consideration is whether a fully deferred eighteen-month suspension, subject to a period of probation, is an appropriate sanction for respondent’s misconduct.
In fashioning an appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Clearly, respondent’s conduct was not exemplary. However, in light of the extraordinary mitigating factors present, we *28 find it is appropriate to defer the eighteen-month suspension in its entirety, and to impose a period of probation. We caution respondent that any misconduct during the probationary period may be grounds for l^making the deferred suspension executo-ry, or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record filed herein, it is ordered that Inez Frances Kerth, Louisiana Bar Roll number 7352, be suspended from the practice of law for eighteen months. It is further ordered that said suspension shall be fully deferred, subject to an eighteen-month period of probation. Any misconduct during the probationary period may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The parties also presented evidence, testimony, and briefing with respect to alleged misconduct by respondent arising out of the Guichard matter. However, that matter was never the subject of formal charges filed by the ODC. As we have previously held, it would be a denial of due process of law to find respondent guilty of charges based on evidence adduced at the hearing if she was not given notice of these charges prior to the hearing. See In re: Williams, 02-2698 (La.4/9/03), 842 So.2d 353; In re: Nevitte, 02-1962 (La.9/30/02), 827 So.2d 1135. Accordingly, we have not considered the uncharged conduct in this case and have made no reference to it in this opinion.

. On July 23, 1993, respondent deposited $150.00 in client funds into her trust account, but on August 1, 1993, the account balance fell to $109.78, with no client funds having been disbursed in the interim. Similarly, on September 15, 1993, respondent deposited $374.00 in client funds into her trust account, but on September 23, 1993, the account balance fell to $145.27.

. Ms. Dale Standifer, the Executive Director of the Metropolitan Battered Women’s Program, submitted an affidavit lauding respondent's work with the program and praising her dedication to victims of domestic violence. Ms. Standifer concluded it would be "extremely difficult to replace [respondent] with someone of her level of experience and commitment.”

. Respondent has twice been admonished by the disciplinary board. In 94-ADB-115, she was admonished for failing to properly terminate a client representation and failing to cooperate with the ODC in its investigation. In 94-ADB-126, she was admonished for failing to cooperate with the ODC in its investigation.