ATTORNEY DISCIPLINARY PROCEEDINGS ■
PER CURIAM.
This attorney disciplinary proceeding involves ten counts of misconduct filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Louis A. Gerdes, Jr., an attorney licensed to practice law in Louisiana.[1]
UNDERLYING FACTS
Count I — Jones Matter
In December 1992, Latonya Jones retained respondent to represent her two minor children in a case against her landlord for lead poisoning exposure. Since Ms. Jones was only seventeen years old, respondent named Cynthia Knight, Ms. Jones’ sister, as the plaintiff in the suit instituted on behalf of the minors. Subsequently, the defendants filed a Dilatory Exception of Lack of Procedural Capacity on the basis that Ms. Knight had not been properly qualified to act as tutrix. The trial court granted the defendants’ motion, and allowed respondent an additional thirty days to have Ms. Knight properly qualified.
Respondent took no measures to have Ms. Knight qualified within this time period. As a result, defendants filed a motion to dismiss the suit, which the trial court granted. Respondent filed a motion for new trial from the dismissal, but failed to have Uthis motion set for hearing. Additionally, respondent failed to advise his clients of'the dismissal of their suit.
Count II — Ricard, Matter
Sandra Ricard retained respondent to represent her in a personal injury action arising out of a July 1996 slip and fall accident at the Louisiana Superdome. Respondent filed suit on Ms. Ricard’s behalf in July 1997, but' failed to provide any service information in the petition. Almost two years later, in March 1999, Ms. Ricard complained to respondent that no action had been taken in her case. Thereafter, respondent requested service of the *108 suit. However, service was not effectuated until July 28, 1999, two years after the suit had been filed and months after Ms. Ricard had discharged respondent and filed a complaint with the ODC.
In his testimony at the formal hearing, respondent testified he did not think Ms. Ricard “had much of a case” due to problems with proof of liability. He indicated his decision to file the suit was a “last minute decision” and was done “just to protect her rights.”
Count III — Brown Matter
Shearle and Shorrne Brown[2] retained respondent to represent them in a personal injury action for injuries allegedly sustained on December 16, 1995 while traveling on a bus operated by the Regional Transit, Authority of New Orleans. On December 16, 1996, respondent filed suit on his clients’ behalf, but failed to provide any service instructions until several months later.
Subsequently, defendants filed a motion to dismiss, on the grounds that service had not been made in the time provided by law, and an exception of | svagueness/ambiguity. Respondent took no action on behalf of his clients in response to the motion and exception. Further, respondent neglected to communicate with his clients regarding the status of the case.
In May 1999, the Browns filed a complaint with the ODC alleging that respondent failed to communicate with them. Respondent filed a response alleging he had been communicating with his clients’ mother since his clients were young adults who resided with their mother. He also explained that he accepted 300 or 400 cases per year and sometimes gets “stuck” with cases that he shouldn’t have taken.
Count IV — Hampton Matter
Larry Hampton retained respondent to represent him in a personal injury action arising out of a bus accident in Jefferson Parish. On April 25, 1996, respondent filed suit on behalf of his client. Although respondent provided service instructions in the petition, he failed to pay the filing fee for service. Respondent took no further action in the case and failed to communicate with Mr. Hampton, who had moved to California. Mr. Hampton retained Rose Molloy, a California attorney, to assist him in obtaining information about the status of his case.
In May 1999, Mr. Hampton and Ms. Molloy each filed a complaint with the ODC. Two months later (and three years after the suit had been filed), respondent paid the filing fee to effectuate service of process.
At the formal hearing, respondent asserted the delay in effectuating service was due to the denial of Mr. Hampton’s motion to proceed in formal pauperis and the failure of his employee to determine if service had been made. However, he admitted he did not communicate with Mr. Hampton.
| ¿Count V — Francis Matter
In 1994, Florence Francis retained respondent to represent her in two personal injury matters. One of the matters was dismissed on grounds of abandonment in May 1999. Respondent filed a motion for new trial, which was granted by the trial court. As such, the suit was reinstated. Subsequently, the parties satisfactorily settled the matter.
The second suit was dismissed on the grounds of prescription. According to respondent, his failure to file the suit timely *109 was due improper information provided by his client about her personal injury claim.
In June 1999, Ms. Francis filed a complaint with the ODC alleging respondent’s failure to communicate with her regarding the dismissal of her suits.[3]
Count VI — Williams Matter
In 1998, respondent employed Charles Williams, a Louisiana attorney who had been suspended from the practice of law, as a paralegal.[4] In June 1998, respondent sent Mr. Williams to attend the deposition of one of respondent’s clients. According to the ODC, Mr. Williams did not advise the parties present at the deposition that he was suspended from practice, and provided assistance as counsel in response to two questions directed by opposing counsel to respondent’s client.
Count VII — Navarre Matter
| ¡^Ricardo Navarre retained respondent in 1987 to represent him in connection with class action litigation arising out of a railroad tank car fire. After the criteria of the class was determined, counsel for all plaintiffs (including respondent) were instructed to advise their clients to register to become members of the class. Respondent sent one letter to Mr. Navarre on June 8, 1990, but the letter did not advise Mr. Navarre of the court-ordered deadline for filing the proof of claim. The letter, which was not sent certified mail, was addressed to Mr. Navarre at his last known address. Respondent took no subsequent action to ascertain whether his client responded in any respect, nor did respondent check with the plaintiffs’ committee to determine if Mr. Navarre had registered. Respondent did not send out a second letter or attempt to obtain another address for his client.[5]
In October 1999, Mr. Navarre filed a complaint with the ODC alleging respondent’s neglect of his legal matter and failure to communicate.
Count VIII — Dorsey Matter
Dennis Dorsey retained respondent to represent him in a personal injury matter stemming from an accident which occurred on or about October 24, 1997. Respondent filed suit on Mr. Dorsey’s behalf on October 26, 1998, but did not provide service instructions on his petition. After filing the suit, respondent took no further action in the case.
Approximately two years after the suit was filed, Mr. Dorsey discharged respondent and retained new counsel. On June 14, 2001, Mr. Dorsey’s new counsel requested in writing that respondent immediately send him Mr. Dorsey’s file. When | firespondent failed to comply, Mr. Dorsey filed a complaint with the ODC in August 2001.
Respondent later testified at the formal hearing that he had sent the file on July 23, 2001, five weeks after Mr. Dorsey’s *110 new counsel made his request for such. Additionally, respondent testified that he had only filed suit to interrupt prescription and that he personally thought it was a “bad case” that he did not think he could win.
Count X — Anderson Matter
In November 1998, Margaret Anderson retained respondent to represent her in a personal injury action arising from a November 15, 1998 incident at Bally’s Casino. Respondent filed suit on Ms. Anderson’s behalf in June 1999, but failed to provide service instructions in the petition. Respondent took no further action in the case, nor did he communicate with his client, despite her repeated attempts to contact him.
Almost three years after suit was filed, Ms. Anderson filed a complaint with the ODC, alleging she had learned respondent had not taken measures to have the defendants served. In his response to the complaint, respondent maintained he filed suit on Ms. Anderson’s behalf solely for the purpose of interrupting prescription, because “the liability picture was very poor.” Respondent pointed out that his client’s claim was still viable and that he would voluntarily withdraw so she could retain other counsel to complete the matter.
Count XI — Smith Matter
Respondent represented Dominica Smith in connection with a wrongful death suit. In April 2001, Ms. Smith discharged respondent and requested a return of her |7file. At the same time, she also retained other counsel, Randall J. Meyer, who also made numerous requests that respondent return the file.
in July 2001, Ms. Smith filed a complaint with the ODC, alleging that her case had been pending for over fifteen years and respondent had not returned her file to her new attorney.[6] Respondent delivered the file to Mr. Meyer’s office in October 2001, six months after respondent was discharged and the file was initially requested.
DISCIPLINARY PROCEEDINGS

Formal Charges

Following its investigation, the ODC filed the ten counts of formal charges against respondent at issue in this proceeding. With the exception of the Williams and Smith matters which are the subject of Counts VI and XI, respectively, each of the counts of misconduct alleged violations of Rules 1.3 (lack of diligence) and 1.4 (failure to communicate) of the Rules of Professional Conduct. In the Dorsey and Smith matters (Counts VIII and XI), the ODC alleged a violation of Rule 1.16(d) (failure to protect clients interests at the termination of representation). In the Williams matter (Count VI), the ODC alleged violations of Rules 5.3(b) (failure to properly supervise non-lawyer assistants), 5.5(b) (assist a nonmember of the bar in the unauthorized practice of law) and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
After filing some incidental procedural motions, respondent filed an answer denying the allegations of misconduct. The case then proceeded to a formal hearing.
| sRecommendation of the Hearing Committee
At the conclusion of the formal hearing, the hearing committee filed a lengthy re *111 port finding clear and convincing evidence to support each of the formal charges. Specifically, the committee recognized respondent admitted in most instances to the neglect of legal matters and failure to communicate in violation of Rules 1.3 and 1.4, respectively. As to Counts VIII and XI relative to the Dorsey and Smith matters, the committee found respondent breached Rule 1.16 due to his failure to protect his clients’ interests at the termination of their representations when he did not promptly return their files upon request. Regarding respondent’s failure to supervise his paralegal, the committee concluded respondent violated Rule 5.3(b) because Mr. Williams “participated in the deposition of respondent’s client, and respondent knew Mr. Williams was suspended from the practice of law when he sent him to the deposition.” The committee determined respondent also assisted in Mr. Williams’ unauthorized practice of law and engaged in conduct prejudicial to the administration of justice in violation of Rules 5.5(b) and 8.4(d). However, relying on In re: Vaughan, 01-1948 (La.10/26/01), 801 So.2d 1058, and Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), the committee specifically noted it would not impose additional discipline for these violations because respondent received an admonition in 1999 for the same misconduct, which involved the use of Mr. Williams, who was suspended from practice, in a deposition during the same time period as the misconduct at issue in the instant matter.[7]
|90n the issue of sanctions, the hearing committee recognized in aggravation respondent’s prior discipline,[8] pattern of misconduct, multiple offenses, substantial experience in the practice of law,[9] vulnerability of the victims and lack of remorse. The committee relied on the mitigating factors of personal or emotional problems and absence of selfish motive.
Based on its findings, the hearing committee recommended that respondent be suspended from the practice of law for three years, with two years deferred, subject to a two-year period of probation and conditions.

Recommendation of the Disciplinary Board

Following its independent review of the record, the disciplinary board adopted the findings of the hearing committee, except insofar as it concluded the committee erred in finding respondent violated Rule 1.4(a) in connection with the Francis matter (Count V).
Relying on the aggravating and mitigating factors cited by the hearing committee, the board recommended that respondent be suspended for one year, with six months deferred, subject to successful *112 completion of the Louisiana State Bar Association’s Ethics School program. One board member dissented to the leniency of the proposed sanction.
|inBoth respondent and the ODC filed objections to the disciplinary board’s recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
We find the record supports the findings of the hearing committee, as modified by the disciplinary board. In essence, the common theme running through this case is respondent’s neglect of legal matters and his failure to communicate with his clients. Although respondent attempts to offer explanations and justifications for his actions, the fact remains that his conduct is in violation of the professional rules.
Having found evidence of professional misconduct, the next issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the Inseriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Considered in isolation, none of respondent’s transgressions are particularly egregious. However, taken as a whole, they demonstrate a disturbing course of conduct.
In mitigation, respondent avers that the impact of his neglect of legal matters is lessened by the fact the suits he filed were without merit in the first place and were often filed simply to placate the client.[10] Because these suits had little or no merit, he takes the position his failure to pursue them caused no significant harm to his clients.
To the contrary, however, we find respondent’s defense unacceptable. The practice of filing suits which he knew to have no merit creates substantial harm on *113 many different levels. The practice of filing frivolous lawsuits impose a burden on the legal system and society at large.[11] Such suits undermine public confidence in the legal system and exact a financial and emotional toll on the innocent targets of such filings. The filing of meritless suits adversely impacts those litigants with legitimate and meritorious claims for whom justice is often delayed because time and resources of the legal system must be devoted to dispensing with those frivolous claims. At the same time, the filing of a frivolous suit gives false hope to claimants who believe, however wrongly, that they have a claim. Sometimes the best advice an attorney can l18give to his or her client is that no one is at fault and/or that there is no case to pursue. To file suit merely to placate a client does a disservice to the client, the legal system, and, ultimately, to society at large, which must bear the increased costs of an over-burdened legal system. Accordingly, we decline to consider the lack of merit of the underlying suits as a factor which mitigates the seriousness of respondent’s neglect of legal matters entrusted to him.
However, we find other mitigating factors are present. We recognize that respondent did not act with a dishonest or improper motive. Additionally, at oral argument before this court, respondent’s counsel represented that respondent has reassessed his practice methods and is committed to avoid similar problems in the future.
Under these circumstances, we conclude the appropriate sanction for respondent’s misconduct is a one-year suspension from the practice of law. In light of the mitigating circumstances, we will defer six months of this suspension. Following completion of the active portion of his suspension, respondent shall be placed on probation for a period of one year, during which time he shall complete the Louisiana State Bar Association’s Ethics School program.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Louis A. Gerdes, Jr., Louisiana Bar Roll number 6030, is suspended from the practice of law for a period of one year. Six months of this suspension shall be deferred. Following the completion of the active portion of his suspension, respondent shall be placed on probation for a period of one year, during which time he shall be required to attend the |13Louisiana State Bar Association’s Ethics School program. Any violation of this condition or any other misconduct during the probationary period may be grounds for making the deferred portion of the suspension executory or imposing other discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CALOGERO, C.J., dissents and assigns reasons.
JOHNSON, J., dissents for reasons assigned by CALOGERO, C.J.

. The ODC initially filed eleven counts of misconduct against respondent. However, one count, Count DC, was dismissed prior to the formal hearing. The ODC has not sought review of this dismissal. Accordingly, we will not discuss Count DC in this opinion.

. The Browns are the children of Sandra Ri-card subject of Count II. The hearing committee incorrectly stated they were the children of the complainant subject of Count I.

. The complaint alleged neglect of legal matters and the ODC instituted charges citing a violation of Rule 1.3. However, the hearing committee and disciplinary board found insufficient evidence of neglect. The ODC did not object to the dismissal of the allegation.

. In 1986, Mr. Williams was suspended from the practice of law for a minimum of two years. Louisiana State Bar Ass’n v. Williams, 498 So.2d 727 (La.1986). The charges alleged that Mr. Williams engaged in a conflict of interest when he entered into a business transaction with a client without making full disclosure or advising his client to seek independent legal advice, charged an excessive legal fee in a worker's compensation case and neglected a legal matter.

.Respondent admitted at the formal hearing that his only responsibility in the entire class action litigation was to ensure his client timely registered for the class with a proof of claim. The plaintiffs’ litigation committee handled all other responsibilities.

. This was Ms. Smith's second complaint filed against respondent. Initially, she filed a complaint in 1998 alleging neglect and a failure to communicate. Respondent submitted a response to the ODC. It appears the ODC found insufficient evidence to pursue the matter further.

. Mr. Williams .was ultimately suspended from the practice of law for two years, with all but one year and one day deferred, for participating in a deposition in April 1998 in an unrelated matter while employed for Mr. Gerdes as a paralegal. In re: Williams, 02-2698 (La.4/9/03), 842 So.2d 353. Additionally, the disciplinary board admonished respondent in 1999 for the same incident giving rise to Mr. Williams’ suspension. In re: Gerdes, 99-ADB-071.

. Respondent has been admonished on two prior occasions. In addition to respondent’s 1999 admonishment for using Mr. Williams, a suspended attorney, at a deposition, respondent was admonished in 1995 for a violation of Rules 1.8(e) (offering of financial assistance to client in connection with litigation), 1.15(a) (commingling) and 1.15(d) (failure to maintain interest-bearing client trust account) of the Rules of Professional Conduct. See, 95-ADB-038.

.Respondent was admitted to the practice of law in Louisiana in 1968, approximately thirty-four years at the time of the misconduct at issue in these proceedings.

. Respondent explained that he accepted 300-400 cases per year and sometimes got "stuck” with cases he should not have taken. During testimony before the hearing committee, respondent stated that in the Ricard matter, he filed suit although he acknowledged "I did not think I could win the case; I did not think there was a claim.” He further stated, "the case was so bad, so impossible to win, that I did filer] a favor by filing a suit to protect her interests so at least she had a right to proceed.” In the Dorsey matter, he stated he filed suit despite the fact that he thought it was a "bad case” in which he could not prevail.

. The public policy against the filing of frivolous suits is reflected by La.Code Civ. P. art. 863, which requires an attorney to certify that there is a good faith basis for the filing of a pleading and that the pleading is not filed for any improper purpose.