PER CURIAM.
| j This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Louis A. Gerdes, Jr., an attorney licensed to practice law in Louisiana.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1968. In June 1995, respondent was admonished by the disciplinary board for improperly using his trust account and providing prohibited financial assistance to a client. In December 1999, respondent received another admonition for allowing his nonlawyer assistant to attend and take part in a deposition. Finally, in March 2004, this court suspended respondent from the practice of law for one year, with six months deferred, followed by one year of probation with conditions, for neglecting legal matters, failing to communicate with clients, and knowingly filing meritless lawsuits. In re: Gerdes, 03-2642 (La.3/12/04), 869 So.2d 106 (hereinafter referred to as “Gerdes I ”).
Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
^UNDERLYING FACTS

The Bates Matter

On September 3, 2003, Robert Bates hired respondent to represent him in a personal injury claim stemming from a hit- and-run car accident. Mr. Bates and respondent signed a contingency fee contract the same day.
In March 2004, respondent permitted Dominique Johnson, his nonlawyer assistant, to participate in a telephone interview of Mr. Bates by an adjuster for his uninsured motorist carrier, State Farm Mutual Automobile Insurance Company. In April 2004, respondent’s colleague, attorney Melvin Cade, filed a lawsuit on Mr. Bates’ behalf against State Farm.[1]
In August 2005, State Farm reported Mr. Bates’ claim to the Louisiana Department of Insurance as a suspected fraudulent claim. Among other issues raised in the report, State Farm asserted that Mr. Bates initially claimed lost wages of $5,600 from his employment with AA Contracting Services, LLC between July 14, 2003 and *653 September 12, 2003. However, State Farm secured the affidavit of Candice Bates Anderson, Mr. Bates’ daughter and the person who purportedly signed the lost wages claim letter on behalf of AA Contracting Services. In the affidavit, Ms. Anderson indicated that she was not an employee of AA Contracting Services, she had no knowledge of how much time Mr. Bates missed from work as a result of the accident, and her signature on the lost wages claim letter was forged.
Mr. Bates passed away in October 2006, and respondent was appointed administrator of Mr. Bates’ succession. In January 2007, respondent filed an amended petition requesting that he, as the succession’s administrator, be substituted as the plaintiff in Mr. Bates’ lawsuit against State Farm. In March 2007, in response to State Farm’s exceptions to the substitution, respondent filed a ^pleading requesting that Ms. Anderson, as Mr. Bates’ daughter, instead be substituted as the plaintiff.
The lawsuit proceeded to trial in May 2007. Judgment was rendered in favor of State Farm, and Mr. Bates’ lawsuit was dismissed.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.7 (conflict of interest), 1.16(a)(1) (a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in a violation of the Rules of Professional Conduct or other law), 3.1 (meritorious claims and contentions), 3.3(a)(b) (candor toward the tribunal), 5.3 (failure to properly supervise a non-lawyer assistant), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

The DeGruy Matter

In 1992, respondent began representing Gregory DeGruy in a previously filed lawsuit based on Mr. DeGruy’s employment related personal injury claim. Respondent did not have a written contingency fee agreement with Mr. DeGruy.
During the course of the representation, respondent failed to attend a March 10, 1997 deposition of his client’s medical expert. On other occasions, respondent allowed his paralegal, Charles Williams, to attend and participate in depositions with and on behalf of Mr. DeGruy.[2]
1 ¿Eventually, respondent wished to withdraw from the representation, and the court allowed him to do so by order dated July 12, 2000. Respondent attached to his motion to withdraw a letter stating his opinion that Mr. DeGruy’s case was worth approximately $50,000 and not the $4.5 million Mr. DeGruy claimed it was worth.
Two weeks before the trial date, which was set for some time in August 2000, attorney Eric Person began representing Mr. DeGruy. In October 2000, Mr. Person settled Mr. DeGruy’s case for $65,000. After the case was dismissed, respondent filed a petition for intervention, to collect expenses and a percentage of the attorney’s fees. However, respondent’s intervention was dismissed as untimely. As such, in November 2000, respondent filed a *654 lawsuit against Mr. DeGruy, Mr. Person, and the defendant in Mr. DeGruy’s lawsuit, claiming they conspired to deprive him of his attorney’s fee. Respondent and Mr. Person eventually settled their fee dispute and filed a joint motion to dismiss the lawsuit.
In July 2004, Mr. DeGruy filed a disciplinary complainant against respondent. In addition to the above facts, Mr. De-Gruy’s complaint alleged that 1) respondent requested or consented to a number of continuances without informing him; 2) respondent did not return numerous telephone calls from him; and 3) respondent did not reply to requests for information from him.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(a) (charging an unreasonable fee), 1.5(b) (the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation), 1.5(c) (contingency fee agreements), 1.6(a) (a lawyer shall not reveal information relating to the ^representation of a client), 1.16(b)(1) (a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to make reasonable efforts to expedite litigation), 5.3, 8.4(a), and 8.4(c).
DISCIPLINARY PROCEEDINGS
In April 2009, the ODC filed formal charges against respondent. Respondent answered the formal charges, denying any misconduct. He also claimed he was prejudiced by the ODC’s delay in filing the formal charges in the Bates matter; therefore, he sought the dismissal of those charges. He further claimed that he should not be sanctioned for his conduct in the DeGruy matter because it occurred prior to the misconduct for which he was sanctioned in Gerdes I. According to respondent, the sanction in Gerdes I should be a sufficient sanction for any misconduct found in the DeGruy matter.
Additionally, respondent filed an exception of vagueness and various motions to dismiss the formal charges. The hearing committee chairperson overruled respondent’s exception of vagueness and referred the issues presented in respondent’s motions to dismiss to the merits to be presented at the formal hearing.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
The Bates matter — Respondent provided State Farm with documentation of Mr. Bates’ lost wages on the letterhead of AA Contracting Services. The document was purportedly signed by Candice Bates Anderson; however, she testified that her father signed her name on the document. There is no doubt that |fithe document is false and was fraudulently submitted to support Mr. Bates’ lost wages claim. However, the committee concluded that the ODC did not present evidence demonstrating respondent knew or should have known the document was fraudulent or was involved in the preparation of the document. After learning of State Farm’s suspicions about the document, respondent withdrew the lost wages claim and did not include same in the lawsuit. The document was never presented to the court. The ODC also did not present evidence *655 that respondent did not properly investigate Mr. Bates’ claim prior to filing suit.
After Mr. Bates died, respondent was appointed as the administrator of his succession. He subsequently filed an amended petition, substituting himself as the plaintiff in Mr. Bates’ lawsuit. Soon thereafter, respondent filed another amended petition, requesting Ms. Anderson be substituted as the plaintiff. The committee concluded respondent’s appointment as the administrator of Mr. Bates’ succession was proper because he was a creditor of Mr. Bates. Further, when respondent substituted himself as the plaintiff, no conflict of interest existed because respondent’s interests were not adverse to the interests of another client or person, nor was the representation limited by respondent’s personal interest.
Respondent stipulated that, in March 2004, he permitted his nonlawyer assistant to participate in a telephone interview of Mr. Bates by an insurance claims adjuster. The committee found such conduct constitutes the practice of law and may not be performed by a nonlawyer.
Based on these findings, the committee determined respondent violated Rules 5.3 and 8.4(a) of the Rules of Professional Conduct. However, the committee did not find violations of Rules 1.1(a), 1.7, 1.16(a)(1), 3.1, 3.3(a), 3.3(b), 8.4(c), or 8.4(d).
The DeGruy matter — Respondent represented Mr. DeGruy from 1991 until 2000. Respondent did not attend the 1997 deposition of his client’s treating |7physician, nor did he send another attorney to attend on Mr. DeGruy’s behalf, resulting in his neglect of Mr. DeGruy’s legal matter. However, the committee found the ODC did not present clear and convincing evidence that respondent failed to keep Mr. DeGruy informed, failed to return Mr. De-Gruy’s numerous telephone calls, and requested and consented to a number of continuances.
Respondent’s attorney’s fees were contingent on the outcome of Mr. DeGruy’s case. Respondent did not obtain a written contingency fee agreement signed by Mr. DeGruy. Nonetheless, respondent was not seeking to collect his fees without a basis.[3]
Respondent filed a motion to withdraw from the representation and attached a letter stating that he thought Mr. De-Gruy’s case was worth $50,000 while Mr. DeGruy thought it was worth $4.5 million. The committee found Mr. Person to be a credible witness, and he indicated Mr. De-Gruy was reasonable in his settlement demand. Therefore, the committee found that Mr. DeGruy did not demand $4.5 million, and respondent stated so in the court record in a malicious attempt to hurt Mr. DeGruy’s case. This information was related to respondent’s representation of Mr. DeGruy, and Mr. DeGruy did not consent to respondent’s disclosure of same.
Mr. DeGruy’s trial on the merits was scheduled to begin in early August 2000. Respondent withdrew from the representation approximately three weeks before the trial date, leaving little time for Mr. DeGruy’s new attorney to prepare for trial. The notice respondent provided to Mr. DeGruy, just three weeks before trial, was not reasonable and did not allow Mr. De-Gruy sufficient time to retain new counsel.
*656 | ¡¿Finally, respondent permitted Mr. Williams, his nonlawyer assistant, to attend and participate in two depositions on February 15, 1996. However, in mitigation, the committee noted that the ODC did not present any evidence that respondent sent nonlawyers to depositions after his 1999 admonition for similar misconduct which had taken place in April 1998.
Based on these facts, the committee determined respondent violated Rules 1.3, 1.5(c), 1.6, 1.16, 5.3, and 8.4(a) of the Rules of Professional Conduct. However, the committee did not find violations of Rules 1.4,1.5(a), 1.5(b), 3.2, or 8.4(c).
The committee determined respondent acted negligently in failing to obtain a written contingency fee agreement in the DeGruy matter, but otherwise acted knowingly and/or intentionally. Respondent violated duties owed to his clients, and he caused actual harm to Mr. DeGruy. Upon review of the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined suspension is the baseline sanction.
In aggravation, the committee found pri- or disciplinary offenses, a dishonest of selfish motive (only with respect to the violation of Rule 1.6 in the DeGruy matter), a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1968). In mitigation, the committee found a delay in the disciplinary proceedings and imposition of other penalties or sanctions for similar misconduct.
Under these circumstances, the committee recommended respondent be suspended from the practice of law for nine months.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation. However, in his brief to the disciplinary board, respondent alleged various procedural errors and requested that the board Neither remand the matter, dismiss the charges, or recommend a more lenient sanction.

Disciplinary Board Recommendation

Initially, the disciplinary board addressed the procedural errors alleged by respondent. First, respondent argued the hearing committee erred in not allowing him to pursue his motion to dismiss the formal charges based on the ODC’s inappropriate handling of the investigation. As evidence of the ODC’s “inappropriate handling,” respondent cites 1) the delay in the investigation and prosecution of this matter; 2) the ODC’s expansion of the formal charges beyond the misconduct alleged in the complaints; and 3) the ODC’s failure to recognize possible rule violations by Mr. DeGruy’s subsequent counsel, Eric Person. With regard to the delay, the board indicated that Supreme Court Rule XIX does not give hearing committees or the board the authority to dismiss a matter because of a delay in an investigation or prosecution. At most, the delay would be a mitigating factor, as was found by the committee in this matter. With regard to the ODC’s “expansion” of the formal charges, the board pointed out the ODC sent respondent copies of the complaints and gave him an opportunity to respond, as required by Supreme Court Rule XIX, § 11(B)(2). Finally, with respect to Mr. Person, the board noted the ODC has the prosecutorial discretion to determine how and what it investigates and prosecutes. The issue of whether there were potential rule violations by Mr. Person has no bearing on this matter. Therefore, the board denied respondent’s request to remand the matter to the committee or dismiss the formal charges on the issue of the ODC’s improper handling of the investigation. Second, respondent argued the ODC failed to give him appropriate notice of its intent to file formal charges. The board indicated that any delay between respondent’s *657 receipt of notice of the complaints and the ODC’s filing of formal |incharges can be considered in mitigation. Therefore, the board denied respondent’s request to dismiss the formal charges on this basis.
Turning to the merits, the board determined the committee’s factual findings do not appear to be manifestly erroneous, with one exception relating to the committee’s finding that respondent’s representation of Mr. Bates after his death was not limited by respondent’s personal interest. When respondent had himself substituted as the plaintiff in Mr. Bates’ lawsuit, his representation of Mr. Bates became materially limited by his personal interest. Respondent became a party to the lawsuit, the outcome of which had a direct bearing on his contingency fee interest. In fact, he admitted at the hearing that he proceeded in this matter “to recover whatever fee I had to recover in the process.” The fact that he had a professional relationship with Ms. Anderson but claimed he was unable to reach her before substituting himself as the plaintiff supports the conclusion that he was only pursuing his personal interest in his contingency fee when he substituted himself as plaintiff. Therefore, a conflict existed, and the committee committed manifest error when it found the representation was not limited by respondent’s personal interest.
Based on these facts, the board determined respondent violated the Rules of Professional Conduct as follows:
The Bates matter — Respondent adequately investigated the facts before filing the lawsuit. Respondent was not aware the lost wages letter was fraudulent. Upon learning this, respondent withdrew the lost wages claim and did not include same in the lawsuit. As such, he did not violate Rules 1.1(a), 1.16(a)(1), 3.1, 3.3(a), or 3.3(b). By being substituted as the plaintiff in the lawsuit after Mr. Bates’ death, respondent engaged in a conflict of interest, in violation of Rule 1.7, and violated Rule 8.4(d) by causing unnecessary delay and litigation in the matter. Respondent violated Rule 5.3 by allowing his nonlawyer assistant to participate in |na telephone interview between Mr. Bates and State Farm’s insurance adjuster. The board also determined respondent violated Rule 8.4(a) but not 8.4(c).
The DeGruy matter — Respondent violated Rule 1.3 by failing to attend the deposition of his client’s treating physician. However, the ODC did not prove respondent violated Rules 1.4 and 3.2 because it failed to present the testimony of Mr. De-Gruy, and the other evidence in the record does not support a violation of these rules. Respondent also failed to reduce the contingency fee agreement to writing, and he testified that he did not discuss or communicate the basis of the fee to Mr. DeGruy. Therefore, respondent violated Rules 1.5(b) and 1.5(c). However, he did not violate Rule 1.5(a) because the Fourth Circuit Court of Appeal ruled that he had a right to collect a portion of the attorney’s fees from the DeGruy settlement. Respondent violated Rule 1.6(a) when he submitted a letter to the court in which he disclosed his opinion of the value of Mr. DeGruy’s case and lied about the amount of Mr. DeGruy’s settlement demand. Respondent also withdrew from the representation only a few weeks prior to the scheduled trial and disclosed the above information, both of which represented a disregard for Mr. DeGruy’s interests. Therefore, respondent violated Rules 1.16(b)(1) and 1.16(d). Respondent also violated Rule 5.3 when he allowed Charles Williams, a suspended attorney, to attend and participate in two depositions. Finally, respondent engaged in dishonest conduct when he falsely stated that Mr. De-Gruy demanded $4.5 million in settlement, *658 which the committee determined was a malicious attempt to hurt Mr. DeGruy’s case. Having violated all the above rules, respondent also violated Rule 8.4(a).
The board further determined respondent knowingly and intentionally violated duties owed to his clients, the legal system, and the legal profession. He caused significant potential harm to Mr. DeGruy and actual harm in the form of delay and unnecessary litigation in the Bates matter. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is suspension.
The board adopted the aggravating factors found by the committee. Additionally, the board found the aggravating factor of refusal to acknowledge the wrongful nature of the conduct. The only mitigating factor the board found was a delay in the disciplinary proceedings.
Turning to the issue of an appropriate sanction, the board indicated the misconduct in the DeGruy matter occurred during the same time period as the misconduct in Gerdes I. Pursuant to the court’s holding in Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991),[4] the board determined it must treat the De-Gray matter as if it was before the court simultaneously with the misconduct in Gerdes I. Respondent received a one-year suspension, with six months deferred, in Gerdes I. Standing alone, respondent’s misconduct in the DeGruy matter, especially his attempt to harm Mr. DeGruy’s credibility by disclosing confidential information and making false statements, would justify at least a short period of suspension (three to six months). Thus, the board concluded that, had the court considered the DeGruy matter with the misconduct in Gerdes I, it would have deferred less of the suspension or none at all.
Since the misconduct in the Bates matter occurred outside the time period in which the misconduct in Gerdes I occurred, the board determined it was subject to a separate sanction analysis. Considering all the circumstances of the Bates matter, the board determined the appropriate sanction would be in the range of a six-month suspension, with no time deferred because of respondent’s history of Rule 5.3 | ^violations. A combined sanction for both the Bates matter and the DeGruy matter would be a suspension in the range of nine months to one year.
Under these circumstances, the board recommended respondent be suspended from the practice of law for nine months.
Respondent filed an objection to the disciplinary board’s report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96- *659 1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Before we address the merits, we turn to a discussion of respondent’s first two arguments in his brief to the court. These arguments are essentially reiterations of his arguments to the disciplinary board. We find the board adequately addressed the arguments and properly found no basis to remand the matter to the hearing committee or dismiss the formal charges. Accordingly, we will adopt the board’s determinations and find neither remand nor dismissal is appropriate.
Turning to the merits, the record supports a finding that in the Bates matter, respondent engaged in a conflict of interest by being substituted as the plaintiff in 114the lawsuit after Mr. Bates’ death. In the DeGruy matter, respondent failed to attend the deposition of his client’s treating physician. Respondent also failed to reduce the contingency fee agreement to writing. Additionally, respondent submitted a letter to the trial court in which he (1) disclosed his opinion of the value of Mr. DeGruy’s case and (2) misrepresented Mr. DeGruy’s settlement demand. Respondent also withdrew from the representation only a few weeks prior to the scheduled trial. Finally, respondent allowed a nonlawyer to attend and participate in two depositions.[5] Based on these facts, respondent has violated the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly violated duties owed to his clients, the legal system, and the legal profession. He caused potential and actual harm to his clients and the legal profession. The baseline sanction for this type of misconduct is suspension.
| ^Aggravating factors include prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. In mitigation, we recognize the delay which has occurred in this disciplinary proceeding.
Turning to the issue of an appropriate sanction, we note that the misconduct in the DeGruy matter occurred from 1992 to 2000, while the misconduct at issue in Gerdes I occurred from 1990 to 2001. *660 Because these time periods are the same, we agree with the board that the misconduct in the DeGruy matter should be treated as if it were before the court simultaneously with the misconduct in Gerdes I, pursuant to the approach established in Chatelain. However, had this misconduct been considered with the misconduct in Gerdes I, we would not have imposed a harsher sanction. Therefore, we find no additional discipline is warranted for the misconduct in the DeGruy matter. Accordingly, the only misconduct at issue in determining an appropriate sanction is the conflict of interest in the Bates matter. In mitigation of the severity of that conduct, we note that there was no harm caused to respondent’s client or to the personal injury case as a result of respondent’s ill-advised efforts to substitute himself as the plaintiff.
Accordingly, under all the circumstances of this case, we find the appropriate sanction is a nine-month suspension from the practice of law, with all but three months deferred. Following the active portion of his suspension, respondent shall be placed on supervised probation for a period of one year, during which he shall report to a practice monitor and attend and successfully complete the Louisiana State Bar Association’s Ethics School. We caution respondent that any violation of the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate.
| ifiDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Louis A. Gerdes, Jr., Louisiana Bar Roll number 6030, be and he hereby is suspended from the practice of law for nine months. It is further ordered that all but three months of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on supervised probation for one year governed by the conditions set forth in this opinion. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent did not file the lawsuit himself because he was suspended from the practice of law at the time, pursuant to the court’s order in Gerdes I.

. Mr. Williams is an attorney who has been suspended from the practice of law since 1986. See Louisiana State Bar Ass'n v. Williams, 498 So.2d 727 (La.1986), and In re: Williams, 02-2698 (La.4/9/03), 842 So.2d 353. Nevertheless, on February 15, 1996, Mr. Williams attended Mr. DeGruy’s deposition and the deposition of Tina Louise Davis. During the depositions, Mr. Williams agreed to the normal stipulations concerning the depositions, assisted Mr. DeGruy with his responses, and cross-examined Ms. Davis.

. In respondent’s suit against Mr. Person, the Fourth Circuit Court of Appeal ruled that respondent's failure to obtain a written contingency fee agreement with Mr. DeGruy did not preclude him from collecting a portion of the attorney’s fees for the work he performed. The committee indicated it would defer to the Fourth Circuit on this issue and found that respondent did not violate Rule 1.5 by seeking to collect fees without a basis.

. In Chatelain, this court observed that when a second attorney disciplinary proceeding involves conduct which occurred during the same time period as the first proceeding, the overall discipline to be imposed should be determined as if both proceedings were before the court simultaneously.

. Respondent also allowed a nonlawyer to listen in while his client, Mr. Bates, gave a telephone statement to an insurance adjuster. Because the record is clear that the nonlaw-yer assistant asked no questions during the statement, and that he did not take any action on behalf of Mr. Bates, we find no misconduct occurred in this regard. In reaching this conclusion, we emphasize that respondent's decision to allow his nonlawyer assistant to attend the statement in respondent’s absence was unwise and fraught with potential danger. However, we find that under the unique facts presented in this record, where the non-lawyer assistant did not undertake any actions on behalf of the client, respondent's conduct does not violate the ethical rules as alleged in the formal charges. Cf. In re: Garrett, 08-2513 (La.5/5/09), 12 So.3d 332 (attorney disciplined for allowing nonlawyer assistant to represent clients during recorded statements taken by insurance companies).